# Koppel Trust

*Arthur L. Shanker,* for petitioner.
*Dorothy K. Phillips,* for respondent Busch.
*M. Paul Smith,* for trustee.
*Henry L. Menin,* guardian and trustee ad litem, in propia persona.

TREDINNICK, *J.,* July 7, 1980—Max M. Koppel, petitioner, and his then wife, Sondra (now Busch), created "Clifford" trusts for each of their four children by two trust agreements executed in 1968 and 1969. He now seeks reimbursement from income, and to the extent that is insufficient, from principal of the trusts for educational expenses of the children. Sondra Busch qualifiedly agrees the petition should be granted. The present trustee and a guardian and trustee ad litem appointed by the court on its own motion to represent the children[1] oppose the petition.

---

1. Judge Satterthwaite's order appointing the guardian and trustee ad litem directed the appointee (Henry Menien, Esq.) to act for all four children. Two (Janice and Wendy) were over 18 at the time of the appointment (October 18, 1979). Thus, technically, we shall consider the appointment to be effective only as to the minors, Cindy and Adam.

The trust agreements were identical in relevant content. The first was executed on September 26, 1968, and established trusts for three of grantors' children, Janice, Wendy and Cindy. The second executed November 6, 1979, established a trust for their son, Adam. In relevant part, they provide as follows:[2]

(1) Paragraph 3a provides that: "Except as hereinafter otherwise provided, the *net income* of each of said trusts *shall be accumulated* until the respective beneficiary thereof shall attain the age of 21 years . . ."

(2) Paragraph 3b states that: "Notwithstanding provisions to (sic) sub-paragraph (a), the *net income* of each trust *may be used in the sole discretion of the trustee* for the *support, maintenance and education* of the respective beneficiary . . ."

(3) The remaining dispositive subparagraphs (3(d) and 3(e)) direct distribution of accumulated income to the beneficiaries upon termination of the trusts, and return of corpus to the grantors or the survivor of them.

(4) Paragraph 4 gives the trustee *sole discretion* to expend such amounts of corpus as deemed necessary because of ". . . any emergency . . . in the affairs of the beneficiary by reason of sickness, accident or other circumstances . . ."

(5) Paragraph 6 states in part: "No part of the

---

2. The copy of the September 26, 1968 trust agreement attached to the petition does not contain page two thereof. It is apparent that the missing page is identical to page two of the November 6, 1969 trust agreement, and we have verified this to be so by reference to documents in file attached to petitions for adjudication of accounts filed in these trust estates heretofore.

corpus or income . . . shall be used . . . to satisfy any legal obligation of the Grantors."

(6) Paragraph 10 states the trust is irrevocable, and that Grantors have no power to alter, amend, revoke or terminate the trust or any of its provisions. (Emphasis supplied.)

The trust agreements appointed H. Donald Busch, Esq., as trustee. Marital difficulties arose between the grantors in the mid-seventies. For this reason,[3] Mr. Busch was removed as trustee by order dated May 14, 1976. Provident Bank was named interim trustee. Provident never acted. Instead, pursuant to the joint petition of grantors, I. Raymond Kremer and Leonard Zack, Esqs., were appointed successor trustees on October 13, 1976.[4] Both subsequently requested to be removed, and were—Mr. Zack by order dated November 15, 1979, and Mr. Kremer (now Judge Kremer of the Philadelphia Court of Common Pleas) by order dated April 22, 1980. Each order appointed Continental Bank as "substituted co-trustee." The net result is that Continental is now sole trustee.

The petition asserts, and it is stipulated, that petitioner expended, in 1978 and 1979, a total of $21,913.63 for education expenses of the four children. It is this sum he seeks from the four trusts. The precise present balances of the trusts do not appear of record; however, the accounts filed and audited in May, 1976 show combined balances for the three girls of $51,743.34 principal and

3. Mr. Busch subsequently married Sondra Koppel.

4. The petition and resultant decree are docketed at No. 77571, a separate file assigned to the trusts for the three girls on audit of the account of their trusts filed by Busch at the time of his removal.

$14,410.19 income, and for Adam, principal of $17,859.72 and income of $4,751.42. It cannot be said now definitively whether present accumulated income would be sufficient to meet the demand or whether principal would be needed as well.

No testimony was taken in support of or in opposition to the petition, the parties being satisfied to rest upon the terms of the trust agreements, the record of proceedings heretofore, and a brief stipulation given orally (and transcribed) before the court on May 21, 1980. The stipulation may be summarized as follows:

(1) Were Max Koppel to have been called to testify, he would state that the purpose of the trusts was to create a fund for the children's education, and that a property settlement agreement between him and Sondra in 1976 was a reaffirmation of that intent, as well as intended to change distribution of the corpus on termination of the trusts.[5]

(2) Were Sondra Koppel Busch to have been called to testify, she would also state the trusts were established for educational purposes,[6] that she does not oppose the petition provided that principal is not expended (now or later) to an extent which would invade the $20,000 of principal to which she considers herself entitled on termination of the trusts under her interpretation of the aforementioned property agreement.

(3) Max Koppel's gross income for the year 1979 was $235,000; his adjusted gross income was $211,000, and he paid approximately $80,000 in

---

5. The guardian, while stipulating that the testimony would be to this effect, asserts it to be irrelevant.

6. The guardian, while stipulating that the testimony would be to this effect, asserts it to be irrelevant.

Federal income tax for that year. He lists eight dependents on his return.

Initially, we must determine what, of the foregoing, may be considered. It is, of course, axiomatic that the terms of the trust control the issue. If unambiguous, extrinsic evidence (in the absence of fraud or mistake[7]) is not admissible to vary or add to the terms of the trust: 2 Scott, Trusts § 164.1 (3d ed. 1967); Restatement, 2d, Trusts, § 38. The trust instruments here are perfectly clear. They *first* enunciate a general intent that income be *accumulated,* and then introduce an exception, allowing income to be used for the support, maintenance and education of the beneficiary but only in the *sole* discretion of the trustee. Thus the stipulation that both grantors intended the trusts to be used for educational expenses of the children, to the extent that it suggests the terms of the trust *require* the disbursement of income for that purpose, must be ignored.

A similar fate must befall the property settlement agreement entered into by the grantors. To the extent that it attempts to alter the terms of the trust as it may affect the income beneficiaries,[8] it is of no effect. Not only does the law so provide, but the agreements specifically prohibit this as well.

Prior trustees in these trusts have expended income for educational expense—whether directly or

---

7. In argument and brief, petitioner's counsel used language generally suggestive of a "mistake" on the part of the grantors. No testimony supports such a theory.

8. The property settlement agreement alters disposition of the corpus on termination of the trust. Since the *then* corpus belongs only to the grantors under the trust instrument, they are free to alter its disposition as they choose.

by reimbursing one or the other grantor is not clear from the record. The present petition apparently arose after Judge Kremer declined to authorize reimbursement—perhaps because he had already petitioned for his removal because of his ascension to the bench. In any event, the present legally appointed sole trustee, Continental Bank, has, by opposing the petition, in effect exercised the discretion accorded it by the trust instruments and declined the disbursement requested. The question therefore becomes—has the trustee abused its discretion?

In general, "where discretion is conferred upon the trustee with respect to the exercise of a power the court will not interfere with him in his exercise or failure to exercise the power so long as he is not guilty of an abuse of discretion." 3 Scott, Trusts, § 187 (3d ed. 1967); Bell Estate, 393 Pa. 623, 144 A. 2d 843 (1958); Martin's Estate, 135 Pa. Superior Ct. 136, 4 A. 2d 551 (1939); Duffy Estate, 6 D. & C. 2d 80 (1956). See, also, Restatement, 2d, Trusts, § 128. In the first instance, it is important to note that the trustee is here presented not with disbursement to the beneficiary or to the provider of educational services, but with reimbursement to the father of the beneficiaries and a grantor of the trusts. The father had, through the period we are concerned with, and presumably has at present, a very ample income. During that period, he had, as noted heretofore, a net income after taxes of $131,000. He, of course, has a legal duty to support his minor children, including the cost of education. At that level of income, he undoubtedly further has a duty to support the two children who are over 18 and attending college, including the cost thereof: Com. ex rel. Ulmer v. Sommerville, 200 Pa.

Superior Ct. 640, 190 A. 2d 182 (1963). The guardian suggests that in such circumstances, the trust provision that prohibits the distribution of principal or income ". . . to satisfy any legal obligations of the Grantors" would *prohibit* the payment of the educational costs petitioner seeks here—presumably even if the trustee agreed to it. We need not explore that point exhaustively, here, primarily because we are satisfied that under the circumstances, the trustee has not abused its discretion in declining to reimburse petitioner.[9] Considering the ability of the petitioner to pay the educational expenses, and the fact that he has paid them, it is eminently reasonable that the trustee decline to reimburse him and to accumulate that income for the future benefit of the beneficiaries.

Accordingly, we enter the following

## DECREE

And now, July 7, 1980, the petition of Max Monroe Koppel, M.D., to compel reimbursement of educational expenses is dismissed.

---

9. Secondarily, the record is not sufficiently complete to allow careful consideration of the point. Petitioner is under an order for support for the four children—presently $500 per month. Obviously, income could not be used to pay that sum or any portion of it. However, whether that sum is intended to cover educational costs is not clear. Further, petitioner might now be entitled to removal of the oldest two children from the order (although subject to an action by them for support while in college), thus raising a question of whether in fact he is under a "legal" duty with respect to them. (Examination of the file (Com. ex rel. Sondra S. Koppel v. Max M. Koppel, 3133 July T. 1975) reveals that petitions for modification of the order are presently pending.)